UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **XPEL TECHNOLOGIES CORP.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-08-CA-175-XR** |
| | ) | |
| **AMERICAN FILTER FILM** | ) | |
| **DISTRIBUTORS,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER**

This case concerns the use of designs for window film and paint and headlamp protection products for various models of automobiles. In short, Plaintiff alleges that two competitors and their owners engaged in improper business practices such as illegally copying their product images and distributing them to other businesses and automobile dealerships. Specifically, Plaintiff pleads claims against these Defendants for 1) breach of contract, 2) violation of the Digital Millennium Copyright Act, 3) copyright infringement, 4) fraud, fraudulent inducement, misrepresentation, and negligent misrepresentation, 5) unjust enrichment, misappropriation, and conversion, 6) tortious interference with existing and prospective contracts, 7) conspiracy, 8) unfair competition and false advertising, and 9) misuses of property and proprietary information.

Defendants filed two motions to dismiss, or in the alternative, for more definite statements (Docket Nos. 27 and 39), to which Plaintiff responded. Having considered the briefing, along with the pertinent case and statutory law, the Court GRANTS in part and DENIES in part Defendants' motions.

**Factual Background**

The facts in this case have thus far been solely supplied by Plaintiff. Therefore, the Court must rely exclusively on Plaintiff's assertions in laying out the factual background.

Plaintiff XPEL creates designs for paint and headlamp protection and window film products for different models of automobiles. Some of their Kit Designs are delivered electronically through XPEL's web-based proprietary software and accessed by the end user's computer hardware.

According to XPEL, it obtained copyright registration for its Design Access Program 6.2 on January 4, 2005 and applied for copyright protection for its Kit Designs on August 30, 2007.

XPEL also contends that it implemented an End-Users Licensing Agreement (EULA) that customers of its products were required to click their acceptance to before they could access the products. XPEL asserts that its business model is based upon charging for use of and computer access to its products and that its business model would be ruined if customers could obtain its electronic products without charge or restriction.

Defendant American Filter Film Distributors (AFF) provides window film products and installation tools to professional window dealers, automotive dealerships, and others who sell and install window film.

Defendant Film & Vinyl Designs, LLC (Film & Vinyl) sells window film and paint protection pattern cutting packages, hardware for cutting window film and paint protection patterns, plotter supplies, and patterns for window film and paint protection products.

Defendant Larry Wassell is the owner of AFF.

Defendants Larry Wassell and Brett Wassell co-own Film & Vinyl. According to Plaintiff, Defendants Film & Vinyl and AFF have operated out of the same office since at least 2002.

-2-

Plaintiff avers that since November 2002, AFF and/or Film & Vinyl have intermittently used XPEL's services to provide XPEL Kit Designs to AFF and/or Film & Vinyl's dealers and customers. During these times, Defendants purportedly accepted the then current versions of XPEL's EULA via a click-through mechanism on XPEL's web site. During this period, Plaintiff alleges that software that could copy an XPEL Kit Design resided on one or more of Defendants' computers. This software was allegedly represented by an icon entitled "Capture." By Plaintiff's account, Defendants activated this capture software in violation of the law and of their agreement with Plaintiff.

Plaintiff further avers that on one or more occasions, Defendants responded to a customer's request for an XPEL Kit Design by using all or a portion of a copied XPEL pattern without properly paying XPEL for its use. Additionally, Defendants purportedly sold copies or derivatives of copies of XPEL's Kit Designs to car dealerships.

Plaintiff also states that Defendants used XPEL's software products beyond the scope of Defendants' license and prepared derivative works based upon XPEL's Kit Designs beyond the scope of their license.

Because of these purported facts and others like them, Plaintiff filed suit on March 4, 2008, pleading causes of action against Defendants for the following: 1) breach of contract, 2) violation of the Digital Millennium Copyright Act, 3) copyright infringement, 4) fraud, fraudulent inducement, misrepresentation, and negligent misrepresentation, 5) unjust enrichment, misappropriation, and conversion, 6) tortious interference with existing and prospective contracts, 7) conspiracy, 8) unfair competition and false advertising, and 9) misuses of property and proprietary information.

Defendants responded to these allegations by filing two motions to dismiss, or in the alternative, for more definite statements (Docket Nos. 27 and 39). Defendants' specific bases for

these motions are considered below.

**Analysis**

Motion to Dismiss Standard

In determining the merits of a 12(b)(6) motion to dismiss, the Court must accept "all well-pleaded facts as true and . . . view them in the light most favorable to the plaintiff."[1] Moreover, the Court "may not look beyond the pleadings" in ruling on the motion.[2] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face."[3] In other words,"factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[4]

Copyright Claims

Defendants challenge the Court's jurisdiction to consider any copyright infringement claims arising before the Copyright Office "receive[d] the application, deposit, and fee" for Plaintiff's registration of its copyright claim.[5] Defendants do not, however, assert which, if any, of Plaintiff's copyright claims arise from events that transpired prior to the Copyright Office receiving the necessary forms and fees. Defendants further make the blanket statement that the Court does not

---

[1] McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992).

[2] *Id*.

[3] In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).

[4] Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1965 (2007).

[5] Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 365 (5th Cir. 2004). *See also* 17 U.S.C. § 411(a).

have jurisdiction over any claims which "exceed what [Plaintiff has] applied to register with the Copyright Office."[6]

Because Defendants have failed to show how their arguments relate to any claims actually pled, their motion to dismiss Plaintiff's copyright claims is denied. The Court will entertain another such motion only if, and when, Defendants can relate their legal contentions to the facts of this case.

Lanham Act Claims

Plaintiff has pled Lanham Act claims under 15 U.S.C. § 1125(a). That provision addresses false descriptions of goods and services and false designations of origins. According to Plaintiff, Defendants' Kit Designs were created, at least in part, by modifying XPEL's Kit Designs. Plaintiff protests that Defendants failed to inform their customers of their reliance on XPEL's work.

Defendants assert that the crucial word for analysis in 15 U.S.C. § 1125(a) is "origin." According to them, this word refers to a physical product, not an intangible idea or design, and therefore, Plaintiff's claims cannot stand.

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*,[7] the Supreme Court considered a case involving the reproduction, under a new name and by a new company, of a television series on World War II , where no permission was obtained from or attribution given to the original television producer. The Court addressed the question of what § 1125(a) of "the Lanham Act means by the 'origin' of 'goods.'"[8] It found that the "most natural understanding of the 'origin' of 'goods'- the

---

[6] Docket No. 27 at 3.

[7] 539 U.S. 23 (2003).

[8] *Id.* at 31.

source of wares - is the producer of the tangible product sold in the marketplace."[9] In the Court's view, the expression "origin of goods" is "incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain."[10] Thus, "the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."[11]

While its opinion is focused on the "origin of goods" language, the Supreme Court observes that a different outcome might result from a claim for misrepresentation under the "misrepresents the nature, characteristics or qualities" provision of § 1125(a).[12] To that end, Plaintiff argues it pled a claim for misrepresentation in paragraph 224 of its complaint, with the underlying factual bases described in paragraphs 160-181. Defendants did not directly challenge that claim in their motions to dismiss. In light of the Supreme Court's ruling in *Dastar*, this Court welcomes further briefing from the parties as to whether Plaintiff's alleged Lanham Act misrepresentation claim survives.

Returning to the origin of goods claim, Plaintiff contends that the *Dastar* opinion is inapplicable because 1) "its holding is expressly limited to communicative works," and 2) it is "factually inapplicable because the *Dastar* defendant's conduct was completely lawful since the copied underlying work was in the public domain."[13]

Plaintiff cites to an Eastern District of California case in support of the position that *Dastar*

_____

[9] *Id*.

[10] *Id*. at 32.

[11] *Id*. at 37.

[12] *Id*. at 38.

[13] Docket No. 41 at 6.

"only applies to public domain literary work."[14] First, nothing in the cited California district court case supports such a position. More importantly, the reasoning of *Dastar* is not so confined.

In setting forth the rule of law, the Court in *Dastar* states, "the phrase [origin of goods] refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."[15] Plaintiff's contention notwithstanding, this ruling is not "limited to a narrow set of facts"[16] but has broad enough coverage to include the present case.

The Fifth Circuit's opinion in *General Universal Systems, Inc. v. Lee*,[17] a case involving a freight tracking software system, is instructive. While noting that there were "some differences between *Dastar* and the situation at hand," the Fifth Circuit found "*Dastar*'s reasoning controlling."[18] The court observed that the plaintiff had not accused the defendant "of taking tangible copies of its software . . . and selling them as its own," but rather, had asserted that defendant "copied the ideas, concepts, structures, and sequences embodied in its copyrighted work."[19] Therefore, no Lanham Act claim could prevail.

Like in *General Universal Systems*, the Plaintiff in this case attacks Defendants' allegedly

---

[14] Docket No. 41 at 4. Plaintiff cites to *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211 (E.D. Cal. 2004).

[15] *Dastar*, 539 U.S. at 37.

[16] Docket No. 41 at 4.

[17] 379 F.3d 131 (5th Cir. 2004).

[18] *Id*. at 149.

[19] *Id*.

improper use of the ideas, concepts, and designs embodied in its work. Plaintiff does not contend that Defendants improperly acquired and sold its tangible products. Accordingly, Plaintiff's first attempted distinction between *Dastar* and its claims is without merit.

Plaintiff's second argument is that *Dastar* only applies where the "defendant violated no copyright, trademark, or patent law in its copying, editing, marketing, and distribution of the underlying work."[20] Because Plaintiff contends Defendants violated its copyright protections, its Lanham Act claim is distinguishable from the one considered in *Dastar*.

This argument, however, misapprehends the primary reasoning in *Dastar*. The Court distinguished between ideas and concepts, which might be the creative basis for a copyrightable product, and the physical product that results from them. Taken as a whole, the language and logic of *Dastar* indicates that this distinction applies regardless of whether the product at issue is copyrightable, or indeed, has even been copyrighted. After all, the Lanham Act is not merely a replication of copyright law. As the Fifth Circuit observed in its analysis of *Dastar*, "claims to protect an author's interest [are] actionable under copyright law, not the Lanham Act."[21]

Thus, the principal inquiry is not whether a product has been copyrighted, but instead, whether Plaintiff has challenged Defendants' designation or description of a tangible good that it produced. Because Plaintiff has not brought such a challenge, the Court finds that for purposes of its Lanham Act analysis, it is irrelevant whether Defendant did or did not violate copyright laws.

In sum, because Plaintiff's Lanham Act origin of goods claim does not concern tangible

---

[20] Docket No. 41 at 5.

[21] Schlotzsky's, Ltd. v. Sterling Purchasing and National Distribution Co., Inc., 520 F.3d 393, 399 (5th Cir. 2008).

works, but rather, addresses ideas, concepts, and designs, it cannot prevail under the reasoning set forth by the Supreme Court in *Dastar*. Therefore, Defendants' motion to dismiss is granted as to the claim. Further briefing is requested, however, as to whether Plaintiff's purported Lanham Act misrepresentation claim should survive.

State Law Claims - Limitations Periods

Defendants summarily state what they contend are the limitations periods for Plaintiff's state law causes of action and ask that the Court dismiss any claims that might arise from dates outside those periods. Defendants further cite to limiting language within the EULA to contend that the parties agreed to a two year limitations period for all claims.

As with the copyright claims, Defendants do not show how the limitations periods provided for under state law or the EULA apply to any of the claims actually pled by Plaintiff. It is not the duty of the Court to scour through the thirty-five pages of alleged facts to determine which claims should or should not be barred by limitations periods. Rather, if Defendants want the Court to dismiss claims on these grounds, they need to match the law with the facts to show how specific claims are time-barred.

Conversion - Failure to State a Claim

Defendants argue that Plaintiff's claim for conversion should be dismissed because "an action for conversion will lie only for wrongful possession of the **tangible** embodiment of a work."[22] According to Defendants, because Plaintiff's conversion claim stems from Defendants' purported electronic copying of the window film and paint protection designs, not from the physical theft of the film or paint protection kits, the conversion claim cannot stand.

_____

[22] Docket No. 39 at 6 (emphasis added).

The Fifth Circuit has stated that Texas conversion law "concerns only physical property."[23] At least one Texas appellate court, however, has found that trade secrets can be subject to conversion.[24] In this case, Plaintiff claims that Defendants converted its trade secrets in how to design and cut window film and paint protection kits. The question is whether such a claim can be pled.

The Court finds that Texas conversion law does not make a trade secrets exception to its physical property requirement. An examination of the elements of conversion underscores this conclusion. There must be evidence that:

> (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property.[25]

Only with physical property can a party exercise "dominion and control . . . to the exclusion of" another party's rights.[26] Take for example the formula for making Coca-Cola. This formula is a trade secret possessed by The Coca-Cola Company. If a competitor surreptitiously eavesdropped on an internal conversation in which Coke employees were discussing this formula, and if this

---

[23] Carson v. Dynegy, Inc., 344 F.3d 446, 456 (5th Cir. 2003); *See also* Express One International, Inc. v. Steinbeck, 53 S.W.3d 895, 901 (Tex. App. - Dallas 2001, no pet.) ("Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted.").

[24] *See* Chandler v. Mastercraft Dental Corporation of Texas Inc., 739 S.W.2d 460, 469 (Tex. App. - Fort Worth 1987, writ denied).

[25] Ojeda v. Wal-Mart Stores, Inc., 956 S.W.2d 704, 707 (Tex. App. - San Antonio 1997, pet. denied).

[26] *Id*.

competitor then started using the improperly acquired formula in the making of its products, Coca-Cola would justifiably be upset. Coca-Cola could not claim, however, that the competitor possessed exclusive control over the formula, and thus, it could not prevail on a claim for conversion.

If, on the other hand, the president of Coke wrote the formula on a sheet of paper that the competitor then illegally seized, Coke could have a claim for conversion of the paper because a physical document is an item capable of being possessed by only one person or company at a time. While Plaintiff may disagree with the practical effects of such a tangible/intangible distinction, it is clear that Texas law recognizes it.[27]

Therefore, Plaintiff's claim for conversion is dismissed.[28]

Misappropriation of Trade Secrets - Preemption

Defendants make a single line assertion that "claims for misappropriation are preempted."[29] In support of this position, Defendants cite to the Fifth Circuit case of *Alcatel USA, Inc. v. DGI Technologies, Inc.*[30] In *Alcatel*, while the court did find that an unfair competition by misappropriation claim was preempted, it reached no such conclusion with respect to the trade

---

[27] It is important to realize that conversion is only one of multiple claims that a plaintiff can plead for the alleged taking and misuse of its trade secrets. Indeed, in this controversy Plaintiff also brings claims for misappropriation of trade secrets, unjust enrichment, misuse of proprietary information, and conspiracy, all of which relate to Defendants' averred acquisition and use of Plaintiff's trade secrets.

[28] In making this ruling, the Court explicitly rejects the assumption in *Chandler* that conversion of trade secrets is a cognizable claim under Texas law. Such assumption neither comports with the reasoning of the majority of Texas courts nor logically is reconcilable with the elements required to prove conversion.

[29] Docket No. 39 at 8.

[30] 166 F.3d 772 (5th Cir. 1999).

secrets misappropriation claim. In fact, while it did not expressly address preemption with respect to this claim, the court upheld the jury's verdict in Plaintiff's behalf, indicating such claim was not preempted.

This makes sense, as one of the elements of trade secrets misappropriation in Texas is qualitatively different from the elements of copyright infringement. That element is that the "trade secret was acquired through a breach of a confidential relationship,"[31] which is what Plaintiff alleges occurred here. As Plaintiff points out, § 6.4 of the EULA provided a confidentiality clause that governed the exchange of proprietary information between Plaintiff and Defendants. Because Defendants' actions purportedly breached the parties' confidentiality agreement, and because such breach is a necessary element of Plaintiff's trade secrets misappropriation claim, the Court finds that Plaintiff's trade secrets misappropriation claim is not preempted.[32]

Unjust Enrichment - Preemption

As with their trade secrets misappropriation argument, Defendants make a one sentence assertion that "unjust enrichment claims are also preempted."[33] Matching such brevity, Plaintiff counters that "to the extent Defendants were unjustly enriched by [their] conduct,[34] the claim for unjust enrichment is not preempted."[35]

---

[31] *Id*. at 784.

[32] For further discussion on whether trade secrets misappropriation claims are preempted, *See* Spectrum Creations, L.P. v. Carolyn Kinder International, LLC, 514 F. Supp. 2d 934, 947-50 (W.D. Tex. 2007).

[33] Docket No. 39 at 8.

[34] By conduct, Plaintiff refers to Defendants' alleged breach of promises, misappropriation of trade secrets, and unlawful use of proprietary information. *See* Docket No. 41 at 16.

[35] *Id*.

Under the causes of action section, Plaintiff's Amended Complaint states that "Defendants have been unjustly enriched with XPEL's Property."[36] Plaintiff later elaborates on this averment by connecting the misappropriation of trade secrets claim to it.[37] In other words, by misappropriating Plaintiff's trade secrets, Defendants benefitted at Plaintiff's expense.[38] Because the Court has found that due to the inclusion of the confidentiality breach element, Plaintiff's misappropriation of trade secrets claim is qualitatively distinguishable from its copyright infringement claims, and because Plaintiff's claim of unjust enrichment is interwoven with and relies upon the trade secrets misappropriation claim, the Court imputes the additional element in the trade secrets claim to the unjust enrichment claim to find that the latter is not preempted.

Misuse of Proprietary Information - Preemption

In their second motion to dismiss, Defendants include "misuse of proprietary information" in the same heading as unjust enrichment, misappropriation, and conversion, but unlike the other claims, they provide no briefing or case law in support of why this claim should be preempted. Therefore, their request that the Court find that this claim is preempted is denied. Should Defendants wish for the Court to examine the merits of their position, they must first provide at least minimal briefing on the issue.

Breach of Contract - Preemption

Defendants argue that "because there is no qualitative difference between XPEL's copyright

---

[36] Docket No. 34 at 38.

[37] *See* Docket No. 41 at 16.

[38] *See Id.*; *See also* Docket No. 34 at 38.

-13-

claims and its breach of contract claims, the breach of contract claims must be dismissed."[39]

The contract in question appears to be the various renditions of the EULA that governed the parties' interactions during their course of dealing. As to copyright preemption, Plaintiff asserts that "1) at least some of Defendants' EULA promises are qualitatively different than copyright rights; and, 2) to the extent that any of Defendants' EULA promises are equivalent to § 106 copyright rights, they are not preempted because, on the facts of this case, the EULA provides the 'extra element' of bargained-for agreement for consideration."[40]

The Court finds it unnecessary to distinguish between those provisions of the EULA that purportedly include additional elements and those which potentially do not. While there are often many ways one could breach a contract, a breach only takes one action or inaction to effectuate. Given the length and complexity of the EULA, it is impractical to go line by line through it to determine how each provision corresponds to the rights protected by the Copyright Act. Rather, the Court believes the more prudent inquiry to be whether the contract as a whole includes elements that are qualitatively different than those involved in a copyright infringement claim. Under such analysis, it is clear that additional elements are present.

By way of example, Plaintiff cites to a number of rights created by the parties' alleged contractual agreements that impose obligations qualitatively different from those covered under the Copyright Act. To list but a few, Defendants' obligations purportedly included: 1) manufacturing products with hardware approved by Plaintiff, 2) using their best efforts to market Plaintiff's products, 3) reporting to Plaintiff if they discovered that Plaintiff's intellectual property was being

---

[39] Docket No. 39 at 8.

[40] Docket No. 41 at 11-2.

-14-

misused or misappropriated, and 4) maintaining the secrecy of Plaintiff's confidential information.[41]

Plaintiff's position on preemption is supported by the decisions of multiple courts of appeals. Starting with the Fifth Circuit, it has held that party B's violation of a contractual duty not to use party A's drawings in his sales materials was "not preempted by the copyright claims" as it involved more than just "reproduction, distribution, or display."[42]

The Eighth Circuit has stated that a contract contains the requisite additional element when "absent the parties' agreement, [a] restriction [under the Copyright Act] would not exist."[43]

Likewise, the Seventh Circuit, while acknowledging that it is "prudent to refrain from adopting a rule that anything with the label "contract" is necessarily outside the preemption clause," found that "a simple two-party contract is not equivalent to any of the exclusive rights within the general scope of copyright and therefore may be enforced."[44] Indeed, as the Ninth Circuit observed, "most courts have held that the Copyright Act does *not* preempt the enforcement of contractual rights."[45]

Finding that Plaintiff's asserted breach of contract is not equivalent to the exclusive rights protected under the Copyright Act, the Court denies Defendant's motion to dismiss on this issue.

---

[41] *See Id*. at 12.

[42] Taquino v. Teledyne Monarch Rubber, 893 F.2d 1488, 1501 (5th Cir. 1990).

[43] National Car Rental System, Inc. v. Computer Associates International, Inc., 991 F.2d 426, 433 (8th Cir. 1993).

[44] ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1455 (7th Cir. 1996). The court reasoned in part that "rights equivalent to any of the exclusive rights within the general scope of copyright are rights established by law - rights that restrict the options of persons who are strangers to the author . . . A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'" *Id*. at 1454.

[45] Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005) (emphasis original).

<u>Tortious Interference with Existing or Prospective Contracts - Preemption</u>

Defendants summarily state that "copyright infringement claims recast as claims for tortious interference with contract or prospective economic advantage are preempted."[46] Plaintiff's brief response asserts that "to the extent that Defendants tortiously interfered with XPEL's existing or prospective contracts by their conduct other than merely copying matter within the scope of Section 301 of the Copyright Act, the claim for tortious interference is not preempted."[47]

Both sides make conclusory arguments that fail to apply the law to the facts. The record in this case is limited. The facts surrounding the tortious interference claims are not yet sufficiently explicated to enable the Court to rule on whether they are preempted.[48] Because Defendants have not met the burden required of them as the moving party, their motion to dismiss is denied.

<u>Conspiracy - Preemption</u>

Defendants contend that claims for conspiracy are preempted. Like most of Defendants' preemption arguments, they assert the proposition as if it were an absolute legal rule.[49]

Plaintiff alleges that "Defendants collectively made negligent and willful misrepresentations to XPEL, committed fraud upon XPEL, [and] misappropriated trade secrets."[50] Defendants do not

---

[46] Docket No. 39 at 9.

[47] Docket No. 41 at 16.

[48] Although the Court does not squarely address the issue here, it would appear, just from reading Plaintiff's complaint, that the tortious interference claims involve an extra element sufficient to survive preemption. *See* Docket No. 34 at 38.

[49] *See* Docket No. 39 at 9. In reality, most of the state law claims considered in this Order can be preempted under one set of facts but not preempted under another set. To posture that all these claims, regardless of the facts, are preempted is, at best, an oversimplification of the law.

[50] Docket No. 41 at 16.

-16-

contend that the misrepresentation and fraud claims are preempted, and the Court has found that misappropriation of trade secrets claim is not preempted. Plaintiff argues, and the Court agrees, that "to the extent that Defendants conspired to commit these [torts], the claim for conspiracy, which is derivative of those claims, is not preempted."[51]

Statutory Damages and Attorneys' Fees

Defendants move to dismiss Plaintiff's request for attorneys' fees. In sum, Defendants contend that "because it is undisputed on the face of [the] pleadings that XPEL has not yet obtained a copyright registration, it is barred from recovering statutory penalties and attorneys' fees."[52]

Plaintiff responds that it obtained copyright registration for its XPEL Design Access Program on January 4, 2005, a date before Defendants allegedly infringed its copyright-protected rights.[53]

As for the Kit Designs, Plaintiff asserts it applied for copyright registration on August 30,

---

[51] *Id*. This case is distinguishable from the district court cases cited by Defendants, such as *Irwin v. ZDF Enterprises GMBH*, 2006 WL 374960 (S.D.N.Y. 2006) and *Cooper v. Sony Music Entertainment Inc.*, 2002 WL 391693 (S.D. Tex. 2002). *Irwin* and *Cooper* address claims of conspiracy to commit copyright infringement. In *Cooper*, the court held that "Plaintiffs are thus precluded from proceeding further with the conspiracy claim **as it applies to the copyright infringement portion of the suit**." *Id*. at * 4 (emphasis added). The court also held, however, that plaintiffs' claim for conspiracy **related to their claim for fraud** was **not** preempted. *Id*. at 5.

This distinction makes sense. If the alleged conspiracy pertains to a state law claim which is preempted or to a Copyright Act claim, the resulting conspiracy claim should be preempted. If the conspiracy claim relates to claims that are not preempted, which in this case includes claims for fraud, misrepresentation, and misappropriation of trade secrets, the conspiracy claim should also not be preempted. In other words, while an allegation of conspiracy by itself does not add the extra element needed to survive preemption, when it is attached to a claim which already meets the extra element test, the conspiracy allegation should also survive.

[52] Docket No. 39 at 4.

[53] Docket No. 41 at 7.

-17-

2007.[54] If that registration is successful, Plaintiff states the issuance date will be retroactive to the application date.[55]

Even assuming registration is successful and that there are post-registration infringements, Defendants contend that Plaintiff will be unable to recover attorneys' fees for their Kit Designs copyright claims. According to Defendants, Plaintiff is not entitled to attorneys' fees so long as those infringements are part of a string of infringements dating back to the pre-registration period. In *Mason v. Montgomery Data, Inc*., the Fifth Circuit held that "a plaintiff may not recover an award of statutory damages and attorney's fees for infringements that commenced after registration if the same defendant commenced an infringement of the same work prior to registration."[56]

Plaintiff counters by pointing out that Defendants have not argued nor conceded that all alleged post-registration infringements were made by the same Defendants who infringed the works pre-registration. In other words, if Defendant A violated work A pre-registration, but then Defendant B violated it post-registration, the *Montgomery Data* holding would not directly apply. Or alternatively, if Defendant A violated work A post-registration, but not pre-registration, *Montgomery Data* would not control.

As it stands, the factual record has yet to develop to a point where the Court can determine whether 1) there were pre-registration infringements, and 2) if there were, how they relate to any

---

[54] *Id*.

[55] For this proposition, Plaintiff cites to 17 U.S.C. § 410(d), which reads in pertinent part that "the effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office."

[56] 967 F.2d 135, 144 (5th Cir. 1992).

post-registration infringements. Accordingly, Defendants' motion to dismiss Plaintiff's request for statutory damages and attorneys' fees is denied.

<u>More Definite Statement - Fraud, Fraudulent Inducement, and Negligent Misrepresentation</u>

Defendants argue that Plaintiff should have to plead its claims for fraud, fraudulent inducement, and negligent misrepresentation with greater specificity.

FED. R. CIV. P. 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In the language of the Fifth Circuit, this means that Plaintiff must specifically plead the "who, what, when, and where" of the purported fraudulent activity.[57]

Plaintiff's complaint is thick with particularized factual assertions. Indeed, the section styled "Facts" commences on page two and does not conclude until paragraph 212 of page thirty-six. While length alone is not necessarily indicative of factual specificity, in this case, it is.

The Court finds that Plaintiff has met its Rule 9(b) obligations, and therefore, Defendants' motion for greater specificity in pleading is denied.

## Conclusion

In summary, Defendants' motion to dismiss is GRANTED as to Plaintiff's Lanham Act origin of goods claim and its conversion claim.

The motion to dismiss is DENIED as to Plaintiff's copyright, breach of contract, tortious interference with existing and prospective contracts, misappropriation of trade secrets, misuse of proprietary information, conspiracy, unjust enrichment, and statutory damages and attorneys' fees claims.

---

[57] *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

The motion for more definite pleading of Plaintiff's fraud, fraudulent inducement, and negligent misrepresentation claims is DENIED.

As for the Lanham Act misrepresentation claim, the parties have fifteen days (15) from the issuance of this Order to submit additional briefing.

It is so ORDERED.

SIGNED this 11th day of August, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE